### MARY THOMAS v. CHRISTINA ROMANO.

1. ESTOPPEL. *Conduct. Divestiture of title. Absence of fraud.*

In the absence of fraud, misrepresentation, culpable silence, or their equivalent, a party cannot by estoppel be divested of title to real estate.

2. SAME. *Falsehood. Knowledge of facts.*

An equitable estoppel can be predicated of conduct only where the party sought to be estopped acts with full knowledge of the facts, unless he asserts to be true that which he does not know to be true, and his adversary relies upon the statement and thereby suffers injury.

3. TAX TITLE. *Cancellation. Liability of complainant.*

Where a tax title is vacated at the suit of a party, the complainant is liable for the taxes paid by the grantee in the tax deed, with damages, interest and cost.

FROM the chancery court of Warren county.

HON. WILLIAM P. S. VENTRESS, Chancellor.

Mrs. Romano, appellee, was complainant, and Mrs. Thomas, appellant, was defendant in the court below. From a decree in complainant's favor defendant appealed to the supreme court. The facts are fully stated in the opinion of the court.

*Dabney & McCabe,* for appellant.

It may be stated as a general rule, that the conduct relied on to sustain an estoppel must have been made with full knowledge of the facts by the party to be estopped, unless his negligence

was the result of gross ignorance or otherwise involves gross culpability. 11 Am. & Eng. Enc. Law (2d ed.), 433.

It is perfectly certain that Mrs. Thomas did not know that she was the owner of the title to an undivided one-third interest in this land when Mrs. Romano bought from Hughes. On the contrary, it is perfectly certain that she believed that she had lost her title to the undivided one-third interest in the property, and this information she acquired from two first-class lawyers through P. L. Hennessey.

It may be stated as a general rule, that it is essential to the application of the principles of equitable estoppel, that the party claiming to have been influenced by the conduct or default of another to his injury, was himself not only destitute of knowledge of the state of facts, but was also destitute of any convenient or available means of acquiring such knowledge, and that where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel. 11 Am. & Eng. Enc. Law (2d ed.), 434.

There is no evidence that Mrs. Romano was destitute of knowledge as to the condition of the title which she obtained from Hughes, nor is there any evidence that she was destitute of any convenient and available means of acquiring such knowledge. There is abundant evidence that the facts were as well known to her as they were to Mrs. Thomas, and that both had the same means of ascertaining the truth.

*J. M. Shelton and Shelton & Brunini,* for appellee.

It is true Hennessey was the agent of Mrs. Thomas to sell the property and settle with Hughes, and any statement made to Mrs. Romano by Hennessey while negotiating the sale was a part of the *res gestae,* and is to be treated in law as if made by Mrs. Thomas herself.

The authorities to sustain this proposition are numerous, but we content ourselves with two. On page 1143, par. 3, vol. 1

(2d ed.), American & English Encyclopedia of Law, it is said: "The statements, representation, and admission of an agent, made in the execution and within the scope of an authority delegated to him and in reference to business depending at the very time, will be binding upon the principal as a part of the *res gestae.*

In *Haven* v. *Brown,* 22 Am. Dec., 211, the supreme court of Maine said: "The declarations of an agent, so far as they constitute a part of the *res gestae,* or in other words, such as are made by him at the time he is engaged in making a contract on the part of his principal, and having reference to the subject-matter of such contract, may be given in evidence to affect his principal. They are admitted as the representations of the principal himself, whom the agent represents while engaged in the particular transaction.

Representations made by an agent, at the time he is contracting for his principal, constitute a part of the contract, as much as if they had been made by the principal; and a fact stated by an agent in relation to a transaction, in which he is then engaged, and while it is in progress, forms a part of that transaction. But what he says at another and subsequent period cannot be evidence against the principal. The agent's declarations are received, not as an admission, but as part of the *res gestae.*"

Hennessey went to see Hughes' attorney, from whom he learned what Hughes would take, and made a deed to the land. He also learned that the children's interest could not be sold except by a proceeding in the chancery court; and arranged with Mr. Brunini to prepare the papers and obtain the decree of the chancery court for the sale of the children's interest; and it was arranged that Mrs. Romano should pay Hughes the money demanded by him, and Hughes was to make a deed directly to Mrs. Romano, and when the sale of the children's interest was made, Mrs. Romano was to bid a certain sum on it.

The money that was to be paid by Mrs. Romano was to be paid for Mrs. Thomas' interest. It was to get what title Mr. Hughes had at the time.

Two facts clearly appear: First, that Hennessey was Mrs. Thomas' agent, with full power to sell the land and settle the claim of Hughes and get a deed from Hughes; second, that in negotiating the sale, Mrs. Romano was told both by Mrs. Thomas' agent and her attorney that Hughes was to convey the land directly to Mrs. Romano, and that this would vest in Mrs. Romano a good title to the land, free from the claims of Mrs. Thomas; and that, relying on this statement, Mrs. Romano paid out her money to Hughes and took a deed from him.

PRICE, J., delivered the opinion of the court.

Mary Thomas and her two minor children owned and were tenants in common of certain lots of land in the city of Vicksburg, and were nonresidents, living in Delta, Louisiana. In March, 1896, the sheriff and tax collector of Warren county sold the land for the unpaid taxes of 1895, when S. R. Hughes became the purchaser. Hughes had his deed recorded, and on the 27th day of June, 1898, the land not having been redeemed, he filed his bill in the chancery court against Mary Thomas and her two children, Mamie and Nona McNamara, for confirmation of his tax title, and had a decree confirming the same. At the September term of the chancery court, 1899, this matter for the confirmation was reopened and Mrs. Thomas and her two minor children, who had only been served by publication, each filed a demurrer to Hughes' bill. The demurrer was sustained, with a decree following dismissing the bill, and Hughes appealed to this court (29 South., 74), and the case was affirmed, and Hughes' tax title declared void. In the meantime, and prior to the dismissal of Hughes' bill, Mrs. Thomas came over to Vicksburg, and there ascertained that Hughes had been paying taxes on her land for about three years. She was later

informed, and on the same day, by Hennessey Brothers, real
estate agents, that Hughes owned her land. She was at once
taken by Mr. Hennessey to the law office of Shelton & Brunini,
Hughes' attorneys, who told her that Hughes' tax title had been
confirmed, and that her one-third interest in the property was
lost. Upon being so advised, she verbally agreed that Hennes-
sey procure a purchaser for the land, in order that she might
get the two children's interest; as she was badly in need of it for
their support. She was later advised by Mr. Brunini that it
would require a bill in the chancery court before the minors' in-
terest could be disposed of. The firm of Shelton & Brunini, on
the 2d day of November, 1898, for Mrs. Thomas, as guardian
for her two minor children, filed a bill in the chancery court to
have the land sold. Mr. Hennessey procured a proposed pur-
chaser in the person of Mrs. Christina Romano, the appellee
here. Shelton & Brunini and Hennessey explained to Mrs.
Romano the tax title and the chancery proceedings necessary
for a sale, and that Mr. Hughes was threatening about this time
to take possession of this land under his tax title, which at that
time was believed by all parties concerned to be good. Romano
entered into an agreement that she would pay for the property,
at commissioner's sale, $1,000. It was represented to Mrs.
Thomas that it would take $303.21 to satisfy Hughes and pro-
cure a conveyance of her interest in the property, and that this
should be done at once, and at the confirmation of the commis-
sioner's sale, Mrs. Romano would pay into court for said
minors $666.66. Mrs. Thomas could not read or write, and
was a very ignorant woman, and seems to have understood very
little of the transactions. Mrs. Romano paid Hughes the
$303.21, or to his attorneys, Shelton & Brunini, and Hughes
conveyed the land to Mrs. Romano. The matter ran along for
some time, when there appears to have been some dispute about
the rents and possession of the property. At this juncture in
the history of the transaction, Mrs. Romano filed her bill in

the chancery court to estop Mrs. Thomas from asserting her title to the one-third interest in the land, and upon the final hearing the chancellor decreed that a special commissioner convey Mrs. Thomas' interest in the land to Mrs. Romano, and from that decree this appeal is taken.

We have only stated such facts as we think necessary to the understanding of the proposition seriously involved here. The bill in this case was filed and proceeded with upon the ground of estoppel upon the part of Mrs. Thomas to assert title to a one-third interest in the land, and the case was, in its last analysis, fought out on that basis. In the absence of fraud, misrepresentation, culpable silence, or their equivalents — and there is no fraud alleged, no misrepresentation proven, no culpable silence shown — the weight of authority is that one cannot be divested of the legal title to real estate by estoppel. Mrs. Thomas never had any negotiations with Mr. Hughes, and had no settlement of any doubtful claim, because it is admitted that all parties thought Hughes held a good title to Mrs. Thomas' one-third interest. Hughes' tax title was on record, void on its face; but Mrs. Thomas made no representation concerning her title, and in fact knew really nothing about its real condition. Her information was obtained from Hughes' attorneys and Hennessey, the real estate agent. She never saw Mrs. Romano before the sale by Hughes conveying the land to Mrs. Romano. There is no contention that she authorized any one to make any representation, or that any one undertook to make any representations to Mrs. Romano for her. Conduct relied on to sustain equitable estoppel must have been made with full knowledge of the facts by the party to be estopped, unless he asserts as true a fact which he does not know to be true, and his adversary relies upon such statement, to his injury. Silence, in the absence of knowledge of one's rights will not work an estoppel. In vol. 11, Am. & Eng. Enc. Law (2d ed.), p. 434, it is laid down as a general rule "that it is essential to the application of

equitable estoppel that the party claiming to have been influenced to his injury by the conduct or declaration of another was himself not only destitute of the knowledge of the state of facts, but was also destitute of any convenient and available means of·acquiring such knowledge; and when the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel." Estoppel sprung from a determination to prevent fraud resulting in injustice. *Kelly* v. *Wagner,* 61 Miss., 302; *Staton* v. *Bryant,* 55 Miss., 269, and *Murphy* v. *Jackson,* 69 Miss., 403; 13 South., 728. Mrs. Thomas, however, is·liable to Mrs. Romano for such amounts only as she was legally liable to Hughes for — that is, the taxes, damages, interest, and costs — and her interest in the land stands charged with the amount, and Mrs. Romano cannot look to Mrs. Thomas for a restoration of the *status quo.*

The decree will be reversed, and the case remanded for an accounting to be taken in keeping with this opinion.

*Reversed and remanded.*